## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

REDDI BEVERAGE COMPANY LLC.,

Plaintiff,

v.

FLORAL BEVERAGES, LLC

Defendants.

No. 1:23-cv-06147
Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff Reddi Beverage Company, LLC (Reddi) manufactures and sells cannabinoid-infused beverages under the FLORA trademark. Reddi discovered that Defendant Floral Beverages, LLC (Floral), a competitor in the hypercompetitive cannabinoid-infused beverages market, has been selling cannabinoid-infused beverages under an allegedly similar FLORAL trademark. Reddi brings this lawsuit against Floral asserting claims for common law trademark infringement (Count I), violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510 *et seq.*) (Count II), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (815 ILCS § 505/1 *et seq.*) (Count III), and Tortious Interference with Contract and/or Business Expectancy (Count IV). R.[1] 26, Am. Compl. In the interim, Reddi seeks a preliminary injunction order against Floral pursuant to Federal Rule of Civil Procedure 65(a)[2], enjoining Floral from the use of Reddi's

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.
[2]Reddi filed a motion for temporary restraining order (TRO) on August 28, 2023, R. 8, pursuant to Rule 65(b). *See* Fed. R. Civ. P. 65(b). The Court denied the motion and converted

FLORA trademark (FLORA Mark) as it relates to cannabinoid-infused beverages, the use of false or misleading advertisement related to Flora's cannabidiol-infused beverages, and making false and disparaging comments about Reddi and its cannabinoid-infused beverages (the Motion). R. 8, Mot Prelim. Inj. For the reasons stated below, the Court denies Reddi's Motion without prejudice.

## Background

Reddi, an Illinois-based limited liability company, is a developer of high quality cannabinoid-infused beverages designed to promote healthy, nonalcoholic alternatives to adult consumers. Am. Compl. ¶¶ 7–8. Reddi both manufactures its cannabinoid-infused products and licenses others to do so. *Id*. ¶ 10. Reddi describes itself as a pioneer in the beverage industry, spending hundreds of thousands of dollars on research and development of its products. R. 9, Memo. at 2. Since December 2019, Reddi has promoted and sold its goods under the FLORA Mark. Am. Compl. ¶ 9. Reddi anticipates surpassing eight hundred thousand ($800,000) dollars in sales by the end of 2023. Memo. at 2.

Floral is an Indiana-based limited liability company that has sold cocktail enhancers and seltzers infused with cannabinoids such as cannabidiol (CBD) and tetrahydrocannabinol (THC) as early as April 2021 in several states including Illinois, Indiana, and Ohio. R. 13, Resp. at 2. According to Floral, in June 2022 the company began a partnership with "one of the country's most prominent distributors

---

the TRO to a preliminary injunction under Rule 65(a) on September 5, 2023. *See* R. 11, Minute Entry.

of alternative consumer products" and by the summer of 2023 has "grown into the largest mainstream hemp-derived beverage company in Chicagoland." *Id.* at 3.

Earlier this year, Reddi discovered that Floral has been selling nearly identical cannabinoid-infused beverages. Memo. at 2. Reddi also discovered that Floral's cannabinoid-infused beverages were not only being sold at the same retail establishments, but at times, immediately adjacent to Reddi's cannabinoid-infused beverages. R. 9-2, Peabody Aff. ¶ 20. According to Reddi, it has received reports of actual confusion in the marketplace. *Id.* ¶ 16.

On August 25, 2023, Reddi filed this case against Floral for trademark infringement and related claims. Three days later, Reddi filed the instant Motion, which was styled as a motion for TRO and which the Court denied and converted to a motion for preliminary injunction. *See* R. 11, Minute Entry. The Court set a briefing schedule, in which Floral filed a response, and Reddi file a reply. *Id.*; Resp.; R. 15, Reply. Reddi then filed a motion to supplement its reply brief with evidence of actual confusion. R. 20, Mot. Suppl. Reply. The Court denies that motion to supplement and will not consider the additional evidence in its analysis. Upon review of the parties' briefs, the Court ordered Floral to file a supplemental brief on a discrete issue first raised in Reddi's reply brief. R. 29, Surresponse. Reddi then filed a motion for leave to file a surreply, R. 30, Mot. Surreply, which the Court subsequently denied. R. 33, Minute Entry.

Before the Court is Reddi's fully briefed motion for preliminary injunction, in which Reddi seeks to enjoin Floral from (1) using the FLORA, FLORAL, or any

3

confusingly similar trademark in connection with cannabinoid-infused beverages and related goods; (2) publicly stating that Floral has any rights to any FLORA, FLORAL, or confusingly similar trademark; and (3) disseminating false and disparaging statements about Reddi and its products. Mot. Prelim. Inj. at 1–2. Reddi submits its Illinois Certificate of Registration for Flora (R. 9-1, Cert. of Registration), and the affidavits of Reddi co-founder Adam Peabody (Peabody Affidavit) and Reddi employee Misty Davis (R. 9-3, Davis Affidavit) in support of its Motion.

## Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *See Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (cleaned up).[3] To obtain a preliminary injunction, a movant must demonstrate: (1) a likelihood of success on the merits; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm if the relief is not granted. *See Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 80 F. Supp. 3d 829, 833 (citing *Smith v. Executive Dir. Of Ind. War. Mem'ls Comm'n*, 742 F. 3d 282, 286 (7th Cir. 2014)).

If the moving party satisfies each of these requirements, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction[.]" *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

357, 364 (7th Cir. 2019) (quoting *Planned Parenthood, of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)).

The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win[,] the more that balance would need to weigh in its favor." *GEFT Outdoors*, 992 F.3d at 364 (citing *Planned Parenthood*, 896 F.3d at 816). Finally, in balancing the harms, the court must consider the public interest in granting or denying the requested relief. *Ty, Inc., v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

In resolving a motion for injunctive relief, the Court reviews the record from a "neutral and objective viewpoint" without accepting the movant's allegations as true, nor drawing reasonable inferences in the movant's favor. *Doe v. Univ. of Chicago*, 2022 WL 16744310, at *2 (N.D. Ill. Nov. 7, 2022) (citing *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022)). At this stage, the Court must "make factual determinations on the basis of a fair interpretation of the evidence before the court." *Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir. 1986). However, the findings are only

preliminary, and "do not bind the district court as the case progresses." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011).

**Analysis**

The Court begins its analysis with the likelihood of success on the merits for each of Reddi's claims against Floral. To satisfy the likelihood of success requirement, a "possibility of success is not enough" and "neither is a better than negligible chance." *Illinois Republican Party v. Pritzker,* 973 F.3d 760, 762 (7th Cir. 2020) (cleaned up). "But, the moving party need not show that it definitely will win the case." *Id.* at 763. A strong showing of likelihood of success on the merits thus normally includes "a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

### A. Common Law Trademark Infringement, Deceptive Trade Practices and Unfair Competition

"The Lanham Act, the core federal trademark statute, defines a trademark by its primary function: identifying a product's source and distinguishing that source from others." *Jack Daniels's Properties, Inc., v. VIP Products LLC*, 599 U.S. 140 (2023). The purpose of trademark law is twofold: to protect consumers by ensuring they can be confident in making purchasing decisions based on marks they know and trust and to protect "trademark owners who have spent time, energy and resources in presenting a product or service, ensuring that those investments are protected from misappropriation by pirates and cheats." *Grubhub Inc., v. Relish Labs LLC*, 80 F. 4th 835, 844 (7th Cir. 2023) (cleaned up).

The elements of common law trademark infringement in Illinois generally mirror that of the Lanham Act. *Curry v. Revolution Lab'ys, LLC*, 2022 WL 225877, at *8 (N.D. Ill. Jan. 26, 2022) ("The linchpin of both common law and federal statutory trademark infringement claims is whether consumers in the relevant market confuse the alleged infringer's mark with the complainant's mark, meaning the legal elements of the two generally mirror each other in Illinois.") (cleaned up). Likewise, "[c]laims for unfair competition and deceptive trade practices under Illinois law are analyzed according to the principles set forth in the Lanham Act." *Safety Socket LLC v. Relli Tech., Inc.*, 2023 WL 3455117, at *9 (N.D. Ill. May 15, 2023) (citing *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014)); *see also Long Grove Invs., LLC v. Baldi Candy Co.*, 397 F. Supp. 3d 1190, 1198 (N.D. Ill. 2019) same). "To state a claim for trademark infringement and unfair competition . . . a plaintiff must allege that: (1) it has a protectable right in the asserted trademarks; and (2) the defendant's use of the mark is likely to cause confusion." *KJ Korea*, 66 F. Supp. 3d at 1012; *see also Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 330 (N.D. Ill. 2020) (same).

### 1. Protectable Mark

| FLORA | FLORAL |
|---|---|

The parties dispute whether Reddi's FLORA Mark is protectable for purposes of common law trademark infringement. Memo. at 6–7; Resp. at 4; *id.* at n. 4. A mark

is protectable if it is: "(1) registered with the USPTO [United States Patent and Trademark Office], which provides prima facie evidence of validity, ownership[,] and exclusive right to use the registered mark; (2) registered in the Supplemental Register, which does not receive the presumption of validity associated with a registered mark because it is only 'capable' of becoming a trademark; or (3) unregistered but nevertheless entitled to protection under Section 1125 of the Lanham Act." *George G, LLC v. George Charles Salon Inc.*, 2022 WL 823882, at *3 (N.D. Ill. Mar. 18, 2022) (cleaned up).

It is undisputed that Reddi's FLORA Mark is neither registered with the USPTO nor the Supplemental Register.[4] *See* Memo. at 6 ("Plaintiff owns valid common law and Illinois (Exhibit A) trademarks for use in connection with Plaintiff's cannabidiol infused beverages."); Resp. at 4, n. 4 ("Reddi owns no federal registrations or applications for the asserted designations covering the goods at issue in this case, nor does it own any federal registrations or applications for any marks covering goods that incorporate cannabis, cannabinoids, CBD or THC."). With that backdrop, the Court focuses its analysis on whether the FLORA Mark is nevertheless protectable under the Lanham Act.

Reddi argues that the FLORA Mark is protectable because it is both a common law trademark and registered in Illinois. Memo. at 6; *see* Cert. of Registration at 1. Reddi further contends that the FLORA Mark is "inherently distinctive" and has been

---

[4]"Plaintiff is choosing not to enforce the trademark rights attained through its federal trademark registration in this action in light of the ongoing developments and uncertainties concerning the federal legality of cannabinoids such as tetrahydrocannabinol (THC) and cannabidiol (CBD)." Am. Compl. ¶ 17.

continuously in interstate commerce since 2019. Memo. at 6; *see also* Cert. of Registration at 1.

Floral counters that Reddi has failed to demonstrate that the FLORA Mark is protected under section 43(a) of the Lanham Act. Resp. at 4. In fact, asserts Floral, the FLORA Mark is unprotected because the word "Flora" is merely descriptive[5] and fails to invoke a "secondary meaning in the collective consciousness of the relevant community." *Id*. at 5. Reddi, contends Floral, has not provided evidence other than its "subjective, self-serving view" of the FLORA Mark as "inherently distinctive" and "strong." *Id*. at 5–6. Last, Floral argues that Reddi has not submitted sufficient evidence supporting the appropriation of the FLORA Mark, including evidence of the adoption of the FLORA Mark and its "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Id*. at 6–7 (citing *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433–34 (7th Cir. 1999) and *Burger King of Fla., Inc. v. Hoots*, 403 F.2d 904, 909 (7th Cir. 1968)).

"Where a mark is unregistered with the U.S.P.T.O, the burden is on the claimant to establish that it is entitled to protection under § 43(a) of the Lanham Act." *KJ Korea*, 66 F. Supp. 3d at 1013 (cleaned up). When a mark is not federally registered "a Plaintiff may state a claim for trademark infringement and unfair

---

[5] In its opening brief, Reddi does not engage in any distinctiveness analysis under the Lanham Act as required for unregistered marks. Reddi does, however, engage in the distinctiveness analysis in its reply brief and raises new distinctiveness arguments for the first time. *See* Reply at 3–6. Upon order from the Court, Floral filed a surresponse limited to the arguments raised for the first time in Reddi's reply brief. R. 28, Minute Entry. The arguments made in Floral's surresponse are incorporated in the Court's analysis herein.

competition by showing that the mark is protectable based on the degree of its distinctiveness." *Id.* And the "level of trademark protection available generally corresponds to the distinctiveness of the mark." *Id.* The spectrum for "distinctiveness" includes (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful, progressing from the least to most distinctive. *Id.* at 1014.

First, a "generic mark is one that is commonly used and does not identify any particular source and, therefore, is not entitled to any trademark protection." *George G*, 2022 WL 823882 at *3 (cleaned up). Next, "a descriptive mark is one that describes the ingredients, qualities, or characteristics of an article of trade or a service." *Id.* (cleaned up). Descriptive marks typically tend to be "a poor means of distinguishing one source of services from another." *KJ Korea*, 66 F. Supp. 3d at 1014 (cleaned up). "Generic and descriptive terms are not [distinctive], and therefore they cannot generally be registered." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019) (cleaned up). "This rule ensures that competitors can market their products by describing them." *Id.*

A descriptive mark, however, can "receive trademark protection if it acquires secondary meaning in the collective consciousness of the relevant community." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998). Courts define secondary meaning  as "a *mental association* in buyers' minds between the alleged mark and a single source of the product," which "has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are

10

the company's trademark." *KJ Korea*, 66 F. Supp. 3d at 1014. A plaintiff can also demonstrate a secondary meaning "through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." *Id.*

A mark is suggestive if it "does not directly and immediately describe an aspect of the goods," and instead, "requires the observer or listener to use imagination and perception to determine the nature of the goods." *Uncommon*, 926 F.3d at 421 (cleaned up). Unlike generic and descriptive marks, marks that are deemed "suggestive, arbitrary, or fanciful marks are automatically entitled to trademark protection because they are inherently distinctive." *KJ Korea, Inc.*, 66 F. Supp. 3d at 1014 (cleaned up).

Floral argues that the FLORA Mark is a descriptive mark as it merely "describes the ingredients, qualities, or characteristics of an article of trade or a service." Resp. at 5. Not so, asserts Reddi in its reply, the FLORA Mark is not descriptive, and argues for the first time that the FLORA Mark is instead "arbitrary, or at the very least 'suggestive' of Plaintiff's CBD and THC infused beverages." Reply at 3. For purposes of a preliminary injunction, the Court only needs to determine whether the FLORA Mark describes, or as opposed to suggests, cannabinoid-infused beverages.

The USPTO has explicitly stated that the term "flora," "is not inherently distinctive," and is an unregistrable term that is "at best merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's

11

services." R. 29-1, Exh. 1 to Surresponse, Askuvich Decl., Tab C, Fox Hollow Nonfinal Office Action at 41 (citing 15 U.S.C. §1052(e)(1); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012); TMEP §§1213, 1213.03(a)). In numerous filings attached to the Declaration[6] of Floral's IP litigation attorney Alissa Askuvich, the USPTO indicates that the trademark applicant for cannabis related goods and services must disclaim the term "flora" apart from the mark because the term is merely descriptive. *See* Askuvich Decl. at Tab D, Nonfinal Office Actions at 50, 77, 98; Tab E, USPTO Flora Registrations at 114–217. It is clear from the USPTO that the term "flora" is descriptive, and therefore not protectable. But even without the benefit of the USPTO's guidance on the term "flora," the Court on its own independent analysis finds that the term "flora" is descriptive here.

"The line between descriptiveness and suggestiveness can be difficult to draw." *Uncommon,* 926 F.3d at 421. The Seventh Circuit, however, has provided guidance. According to the Seventh Circuit, "the undisputed and prevalent use of the word in the market means that it is not inherently distinctive." *Id.* at 422; *see also Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 497 (7th Cir. 2001) (finding that "BLISS marks are a glut on the market in hair styling and beauty care[,]" and therefore, "[t]hey are not distinctive, so the word does not belong in the 'suggestive' cubbyhole."). "Courts occasionally examine third-party registrations to determine descriptiveness."

---

[6]A court may consider affidavits and other hearsay materials in resolving a motion for preliminary injunction. *Sec v. Cherif*, 933 F.2d 403, 412 n.8 (7th Cir. 1991); *Asseo v. Pan American Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986).

*Uncommon*, 926 F.3d at 423. Floral maintains that "there are at least sixty-three (63) third-party registrations where the term 'FLORA' was required to be disclaimed by the USPTO because the term was found to be merely descriptive, including where the offerings related to cannabis and hemp." Surresponse at 8–9. In support, Floral submits the USPTO registrations for at least fifty trademarks that include the word "Flora." *See* USPTO Flora Registrations. Google search engine results have also been shown in some instances to be an "accurate proxy for the meaning and distinctiveness of words," because its algorithm is "based on the frequency with which users click on the top result" and is predictive of "what online content consumers associate with a search term." J. Thomas McCarthy, 2 McCarthy on Trademarks & Unfair Competition § 11:20 (5th ed.). Floral thus includes a Google search for the words "flora cannabis," which populates approximately twenty-two pages of search results. *See* Askuvich Decl. at Tab F, Floral Search Results. The fact that there are many actors in the cannabis market that use the term "flora," in association with their products and services is indicative of the mark being descriptive.

The degree-of-imagination test is another means of determining between descriptive and suggestive marks employed by the Seventh Circuit. *Uncommon*, 926 F.3d at 422. Under that test, "if a mark imparts information directly it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." *Id.* (cleaned up). Flora, according to Merriam-Webster, is defined as primarily "a treatise on or list of the plants of an area or period," and secondarily as "plant, bacterial, or fungal life." *Flora*, MERRIAM-

13

WEBSTER.COM, https://www.merriam-webster.com/dictionary/flora (Last visited Dec. 11, 2023). Floral argues that the meaning of "flora" as "plant life," is a proxy for the main hemp ingredient found within cannabinoid-infused beverages. Resp. at 5. The Court agrees and finds Reddi's argument that its products do not contain "plant life" but instead "isolated and distilled chemical compounds derived from organic matter" as unconvincing linguistic gymnastics. Reply at 4. For example, Reddi proclaims on its product labels the use of the hemp plant, which is indeed, "isolated and distilled chemical compounds derived from organic matter" more readily identified by the average consumer of cannabis products and services as hemp. This is another point in the direction of descriptiveness.

A mark, however, is protectable despite being descriptive, if the plaintiff can prove that the descriptive mark holds a secondary meaning. *Platinum Home Mortg. Corp.*, 149 F.3d at 728 ("A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the word, term, name, symbol, or device has come to mean that those products or services are the company's trademark.") (cleaned up). As Floral aptly points out, Reddi "has presented no facts or evidence directed to the development of secondary meaning." Surresponse at 6. In reply, Reddi insists that it has "submitted ample evidence that shows the FLORA trademark being displayed prominently and as the dominate element of its products, webpages, labels, and product listings," among others. Reply at 6 (citing Memo. at 4–8). While this may be true, Reddi fails to connect this evidence in its motion for preliminary injunction, or

specifically in its reply brief, to support a secondary meaning argument. It is not the job of the Court to make an argument for Reddi. *See Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."); *see Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.") (cleaned up). The Court agrees with Floral that Reddi has not met its burden. Thus, the FLORA Mark is unprotected.

While the Court need not address the second element of a common law infringement claim, namely whether Floral's use of the FLORA Mark is likely to cause confusion, for the sake of completeness, the Court addresses this element.

### 2. Likelihood of Confusion

Courts consider seven factors when assessing the likelihood of confusion between marks: "(1) the similarity between the marks in appearance and suggestion, (2) the similarity of the products, (3) the area and manner of concurrent use of the products, (4) the degree of care likely to be exercised by consumers, (5) the strength of the plaintiff's marks, (6) any evidence of actual confusion, and (7) the defendant's intent to palm off its goods as those of the plaintiff's." *Holbrook*, 497 F. Supp. 3d at 331 (cleaned up). Because none of the factors are dispositive, the weight afforded to each factor must be fact specific. *Id*. "There are a myriad of variables to be considered, but the most important are the similarity of the marks, the intent of the claimed infringer, and evidence of actual confusion." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 86 F. Supp. 2d 834, 841 (S.D. Ind. 2000), *aff'd*, 233 F.3d 456 (7th Cir. 2000) (cleaned up). The Court turns to each factor below.

*i. Similarity of the Marks*

First, the Court considers the similarity of the marks. When assessing the similarity between the FLORA Mark and the Floral mark (FLORAL Mark), the Court analyzes the marks as a whole and "whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 930 (7th Cir. 2008) (quoting *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228–29 (7th Cir.1993)). Here, Reddi argues that the marks are nearly identical with similar "connotations and commercial impressions invoking imagery of greenery and botany" coupled with "playful" drawing associated with THC and CBD. Memo. At 7. In support, Reddi points to a purported image comparing the marks in question. *See id*. Floral, interestingly enough, argues that Reddi fails to address the similarities of the marks "as they *actually appear to consumers*," when presented in commerce. Resp. at 10. Floral uses the images comparing the labels of Flora and Floral beverages found in the Askuvich Declaration, copied below, to support its argument. Resp. at 10.



The Seventh Circuit is clear that a court "must compare the marks in light of what happens in the marketplace and not merely by looking at the two marks side-

by-side." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (cleaned up). Therefore, the test is "whether the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id.* The crux of the comparison lies on the "*labels* rather than simply the trademarks[.]" *Id.* In short, a court should not examine the "trademarks in isolation" but "at the labelling as a whole." *Id.* at 727.

Although the FLORA and FLORAL trademarks share similar fonts, the appearance in commerce is distinguishable. The label for Reddi products displays the FLORA Mark below an organic mesh of decorated flowers; all often positioned on top of an array of vibrantly colored backgrounds (e.g. variations of purple, orange, yellow, and green). *See* Resp. at 10. The label for Floral products, on the other hand, displays the FLORAL Mark in a cursive font with the letter "F" capitalized with the remaining letters lowercased. *Id.* The word "Floral" is, often but not always, placed within a white circle and above a triangle outlined in black with the phrase "10 MG DELTA-8 THC" inside of it. Usually behind the white circle are images of distinctive fruits found within the beverage's particular flavor (e.g., pineapples for Floral's Pineapple Mint products). *Id.* The labels and packaging for the FLORA Mark and the FLORAL Mark are starkly different, and unlikely to cause customers any confusion. *Sorensen*, 792 F.3d at 727 ("Simply put, the overall commercial impression of the two bottles is quite distinct."). This factor weighs in favor of Floral.

*ii. Similarity of the Products*

Next, the Court evaluates "whether the parties' products are the kind the public might very well attribute to a single source." *AutoZone*, 543 F.3d at 931

17

(cleaned up). "The parties do not need to be direct competitors or sell the same products and services; it is enough for customers to believe that the infringing product could be from the same party." *Roadget Bus. Pte. Ltd. v. PDD Holdings Inc.*, 2023 WL 4865005, at *4 (N.D. Ill. July 31, 2023). Citing exhibits from the Peabody Affidavit, Reddi asserts that the "parties' products are both flavored beverages infused with various levels of THC and CBD." Memo. at 8. Relying on the Declaration from its manager Adam Kline, Floral counters that it offers bottled spirits and canned seltzers, including a THC-infused canned seltzer that until recently Reddi did not sell. Resp. at 11; R.13-1, Kline Decl. ¶ 13. From Floral's own admission, the parties' products are similar despite Floral having more products than Reddi. Still, that is enough for the Court. This factor weighs in favor of Reddi.

### iii.  Area and Manner of Concurrent Use

The Court turns next to "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001) (cleaned up). Reddi posits that "the parties' products are sold to and marketed to the same consumers and retailers," and provides a photograph from the Peabody Affidavit of the two products next to each other in retail space. Memo. at 8.  Reddi also points to the fact that "the proximity of the products, their similar size and content, and similar price points" are indicative of likely customer confusion. *Id.* Floral does not address this factor and therefore waives any argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). No matter, as the Court agrees with Reddi on this factor.

### iv. Degree of Consumer Care

The Court then considers the degree of consumer care factor. For the degree of care exercised by consumers factor, the Seventh Circuit has instructed that "the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 932–33 (cleaned up). Reddi describes both products as inexpensive with price points under twenty dollars, suggesting that the degree of care exercised by consumers when purchasing these products is low. Memo. at 8. Floral, on the other hand, posits, citing the Askuvich Declaration, that because there are no products below twenty dollars on Reddi's website, consumers are likely to exercise a higher degree of care in purchasing these products. Resp. at 11. Additionally, asserts Floral, Reddi fails to provide evidence in support of its argument. *Id*. Here, while Reddi contends that both products are inexpensive and therefore, presumably more subject to impulse purchases, Reddi fails to submit any evidence in support of this proposition.  On that basis, the Court agrees with Floral here.

### v. Strength of the Mark

Next up, the Court turns to the strength of the FLORA Mark. "The stronger the mark, the more likely it is that encroachment on it will produce confusion," *AutoZone,* 543 F.3d at 933 (cleaned up). The strength of the mark also corresponds to its economic and market strength. *Id*. "The term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular ... source." *Roadget*,

2023 WL 4865005 at *5 (citing *Coach, Inc. v. Treasure Box, Inc.,* 2013 WL 2402922 at *7 (N.D. Ind. May 31, 2013)).

For this factor, Reddi argues that it has spent over $300,000 on the development, cultivation, and promotion on its Flora brands, and made over $700,000 sales of its Flora products. Memo. at 8–9; Reply at 11. Additionally, Flora products, according to Reddi, have been sold and made available in fifteen states, including Illinois. *Id.* at 9. Floral counters that Reddi relies on conclusory statements about the strength of the FLORA Mark, and without evidence, Reddi has not met its burden. Resp. at 11.

The Court agrees that Reddi does not provide any evidence to substantiate its claims. That is, it offers no customer testimony or consumer surveys. The strength of a mark "cannot be proven merely by statements from a plaintiff's executives that its mark is famous." *S Indus., Inc. v. JL Audio, Inc.*, 29 F. Supp. 2d 878, 892 (N.D. Ill. 1998) (cleaned up). Since Reddi does not rely on evidence to support its arguments, the Court must find in favor of Floral for this factor.

Moreover, even if Reddi had adduced evidence in support of its contention, the amount of money spent on development, cultivation, and promotion of its products is not indicative of the FLORA Mark's strength. *Knaack Mfg. Co. v. Rally Accessories, Inc.*, 955 F. Supp. 991, 1002 (N.D. Ill. 1997) ("The fact that Knaack has spent money on advertising does not answer the question of whether the advertising was successful in building a brand name."). Nor are the number of states that sell Flora products or the number of sales a useful measure of the FLORA Mark's strength

20

without quantifiable points of comparison such as gross revenue, amount spent on promotions, or the percent of the cannabinoid-infused beverage market share, for example. *See Coach, Inc.,* 2013 WL 2402922 at *7 ("Coach has established that its Marks are strong, as evidenced by the millions of dollars that it spends annually in advertising, marketing, and promoting its goods bearing the marks; the billions of dollars in annual revenue from sales of goods bearing the Coach Marks; and the understanding that the purchasing public has that the Coach Marks signify Coach goods."). Reddi's measures as presented here are not enough to characterize the FLORA Mark as strong at this stage.

### vi. *Evidence of Actual Confusion*

Next, the Court directs its attention to whether Reddi has provided evidence of actual confusion. "Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists." *CAE*, 267 F.3d at 685 (cleaned up). Reddi directs the Court to the Peabody Affidavit for evidence of actual confusion. Memo. at 9. The Affidavit presents two different text message conversations between what appears to be a Flora employee and Flora consumers stating that they believed Floral beverages to be Flora products. Peabody Aff. at Exh. 7, Delilah Text Message and Exh. 8, Conor Text Message. Floral argues that the evidence submitted by Reddi in support of this factor is "so speculative and vague that it is impossible for Floral to meaningfully examine and evaluate." Resp. at 8. Floral continues that the text messages, in particular, are weak evidence because they are between what seems to be "a co-founder of Plaintiff or Plaintiff's employee." *Id*. at 9.

At this stage, the Court is not concerned with the admissibility of the evidence presented. *See Asseo*, 805 F.2d at 26 (the court may consider "[a]ffidavits and other hearsay materials" in resolving a motion for preliminary injunction); *see* Section C, *infra*, Tortious Interference with Contract and/or Business Expectancy. Although the Court recognizes that two text messages do not suggest widespread confusion—they do demonstrate the existence of confusion by consumers. Reddi has adduced evidence of confusion, and since Floral does not provide evidence to the contrary, Reddi wins this factor.

### vii. Intent to Palm Off

For the final factor, the Court looks to whether Floral intended to palm or pass off the FLORA Mark as its own. "Passing off" is "trying to get sales from a competitor by making consumers think they are dealing with that competitor, when actually they are buying from the passer off." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986). An important factor here is the defendant's intent. "In the infringement context, 'intent' refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else." *Roadget*, 2023 WL 4865005 at *5. Floral, submits Reddi, has acted deliberately and willfully to confuse Reddi's customers by "reserving and maintaining booths at trade shows that are directly adjacent to the Plaintiff's own booths." Memo. at 9. The Peabody Affidavit is cited to support this argument. *Id.*; *See* Peabody Aff. ¶ 18 ("During the Trade Show the Defendant prominently displayed its cannabinoid infused beverages under the FLORAL trademark."). On the other side, Floral contends that Reddi provides no evidence in support of its argument and even so, Reddi focuses on inconsequential

events such as the trade show placement and Floral commenting on a social media post "that contained videos showing both Plaintiff's and Floral's products" and stated, "Love to see it." Resp. at 12; Peabody Aff. at Exh. 6, Instagram Post.

The evidence provided does not support Reddi's position that Floral intended to deceive consumers into believing that its products were associated with the FLORA Mark. Reddi's argument concerning the tradeshow is unconvincing and simply mirrors that conventional market competitors may be placed next to one another at a trade show. And disregarding the lack of evidence supporting the social media post, one could easily interpret that Floral commented on the post because its product was mentioned. None of these acts appear on their face to be nefarious. The Court sides with Floral here.

The Seventh Circuit has recognized that the similarity of the marks, the defendant's intent, and actual confusion are often given significant weight in a district court's analysis of the factors. *See CAE*, 267 F.3d at 686. Still, there is "no hard and fast requirement that all three of these factors must weigh in the plaintiff's favor in order to find that a likelihood of confusion exists." *Id.* at 686–87 (cleaned up). "Rather, the district court must give appropriate weight to the factors that are particularly important based on the facts of each case." *Id.* Reddi has failed to convince the Court of a likelihood of confusion on a majority of the factors, but most importantly on the similarity of the marks, strength of the mark, and the intent to palm off. Therefore, Reddi has not satisfied its burden that a likelihood of confusion

stands to exists. With that, Reddi has not shown a likelihood of success on the merits for its common law trademark infringement, and deceptive trade practices[7] claims.

The Court now turns to the likelihood of success on the remaining counts: violation of the ICFA, and tortious inference with contract and/or business expectancy.

### B. ICFA (815 ILCS § 505/1 *et seq.*)

Although the Court need not engage in a likelihood of success analysis on Reddi's ICFA claim because Reddi has failed to demonstrate a likelihood of success on its common law trademark claims, it will. *See supra* Section A, Common Law Trademark Infringement, Deceptive Trade Practices and Unfair Competition; *see also supra* Section A.2.vii*.,* Intent to Palm Off at n.7. In Count III, Reddi asserts a claim under the ICFA, 815 ILCS 505/1 *et seq.* The ICFA "protects consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices," and these "deceptive or unfair practices include any misrepresentation or

---

[7]The Seventh Circuit has held that the Lanham Act trademark infringement analysis applies to state unfair trade practice claims under the Illinois Uniform Deceptive Trade Practice Act and Illinois Consumer Fraud and Deceptive Business Practices Act. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) ("A necessary element of AutoZone's infringement and unfair competition claims under both state and federal law is that there be a likelihood of confusion between the AutoZone mark and the Oil Zone and Wash Zone marks."); *Hearthware, Inc. v. E. Mishan & Sons, Inc.*, 2012 WL 3309634, at *10 (N.D. Ill. Aug. 10, 2012) ("The likelihood of confusion analysis that applies to federal trademark infringement is also used to assess the merits of Hearthware's" unfair competition claim "to the extent they rest upon the use of an allegedly similar mark.") (cleaned up); *Trans Union LLC v. Credit Rsch., Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) ("In order to succeed on such a federal trademark infringement claim, Trans Union must establish that it has a protectable trademark and that defendants' misuse of the trademark creates a likelihood of confusion among consumers. This same analysis applies to Trans Union's unfair competition claim under the Lanham Act, its unfair trade practice claims under the Illinois Uniform Deceptive Trade Practice Act and Illinois Consumer Fraud and Deceptive Business Practices Act.").

the concealment, suppression or omission of any material fact." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (cleaned up). To claim a violation of the ICFA, a plaintiff must allege: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015). Additionally, the protections under the ICFA are generally reserved for consumers. *Mighty v. Safeguard Properties Mgmt., LLC*, 2018 WL 5619451, at *9 (N.D. Ill. Oct. 30, 2018) (cleaned up).

Reddi contends, in a perfunctory effort, that Floral "has made repeated false and deceptive statements concerning" Floral's own products and Reddi's products. Memo. at 10. Reddi's propositions are twofold. First, Floral misrepresents the composition of its cannabinoid-infused beverages, particularly in relation to the amount of THC in Floral products. Memo. at 11. In support, Reddi cites the Peabody Affidavit, in which a "Certificate of Analysis" is attached apparently showing that an independent testing company, Adams Testing, determined that there was 12.098 milligrams per serving of Δ8-THC, but Floral lists 2.5 milligrams of hemp-derived Delta-9 THC in each can. Peabody Aff. at Exh. 10, Testing Analysis. Second, Floral "has made false and disparaging statements" about Reddi's products. *Id*. Reddi again cites a statement from the Peabody Affidavit and an attached text message to support the proposition that Floral has made disparaging comments about Reddi. Peabody Aff. ¶ 24 and Exh. 9, Kim Text Message.

25

Predictably, Floral disagrees, arguing that the only evidence Reddi cites in support of its ICFA claim is an inaccurate and unauthenticated report. Resp. at 12. Reddi, in addition to not adducing relevant evidence, misconstrues and misrepresents data regarding the quality of Floral products. Resp. at 12–13. Floral cites, as evidence, the Kline declaration in which Kline attests that the report was confirmed to have included a clerical error and was within hours published to reflect the correct data. Resp. at 12, n. 10; Kline Decl. ¶ 14 (The independent testing company "confirmed the report included an initial clerical error when reporting the data associated with this sample. The report was republished the same day at 1:34 PM on the same day, showing the correct data.") (cleaned up).

In reply, Reddi produces a report from Adams Testing, that, according to Reddi, "corrects" the data of the original report. Reply at 13. The Report, submits Reddi, continues to show that Floral is "underreporting the THC and CBD levels of its products to consumers." *Id*.

As a threshold matter, though not raised by either party, the Court finds that there is an obvious issue of standing. To bring a suit under the ICFA, "corporations must either show they meet the statutory definition of a consumer or meet the consumer nexus test." *Inteliquent, Inc. v. Free Conferencing Corp.*, 503 F. Supp. 3d 608, 640 (N.D. Ill. 2020). The ICFA defines a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *Mighty*, 2018 WL 5619451 at *9 (citing 815 ILCS 505/1(e)). Courts have found "the statutory

26

definition of a 'person' includes corporations and other business entities or associations so long as that corporation *consumes* another business's product." *Inteliquent,* 503 F. Supp. 3d at 640 (cleaned up) (emphasis added).

Under the consumer-nexus test, a plaintiff must show that "(1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) how defendant's representations concerned consumers other than plaintiff; (3) how defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *CHS Acquisition Corp. v. Watson Coatings, Inc.,* 2018 WL 3970137, at *12 (N.D. Ill. Aug. 20, 2018) (cleaned up). Nevertheless, Reddi is not a consumer under the terms of the statute (but instead a competitor), and did not engage in the required nexus analysis. Had this argument been made, for this independent reason the Court could have found Reddi failed to meet its burden on the likelihood of success element of its ICFA claim.

Nevertheless, the first element of an ICFA claim is a deceptive act or practice by the defendant. *Inteliquent,* 503 F. Supp. 3d at 640. Deceptive or unfair practices include any "misrepresentation or the concealment, suppression or omission of any material fact." *Vanzant*, 934 F.3d at 736 (cleaned up). Conduct is "deceptive" if it "creates a likelihood of deception or has the capacity to deceive." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (cleaned up). A "reasonable consumer" standard is applied when evaluating the likelihood of deception. *Id.* "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the

plaintiff." *Id*. Conduct is considered "unfair" for purposes of the ICFA if "(1) the practice offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury." *Inteliquent*, 503 F. Supp. 3d at 640 (cleaned up). However, a "practice need not meet all three criteria, but rather may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. (cleaned up).

Here, while Reddi alleges a deceptive act or practice, it does not argue any of the other elements for an ICFA violation. Specifically, it does not allege, much less adduce evidence that Floral intended for Reddi to rely on the deception; that the deception happened in the course of trade or commerce; or that the deception proximately caused Reddi's injury. Therefore, the Court finds that Reddi has not shown a likelihood of success on its ICFA claim.

### C. Tortious Interference with Contract and/or Business Expectancy.

Last up, Reddi argues that it is likely to succeed on the merits for its tortious interference with contract and business expectancy claims.[8] To bring a claim for tortious interference with contract, a plaintiff must demonstrate "(1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of the contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Carcharadon, LLC v. Ascend Robotics, LLC*, 2022 WL 3908585, at *13 (N.D. Ill. Aug. 29, 2022) (cleaned up). "The

---

[8]Reddi combines its tortious interference with contract and business expectancy claims, which have slightly different elements, and require a different analysis for each. For that reason, the Court addresses each claim separately.

tort recognizes that individuals have a property interest in their business relationships, such that those interests should be free from harm by others." *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018). First, "a court must determine if a breach of the relevant contract has actually occurred." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015).

To bring a claim for tortious interference of business expectancy, a plaintiff must demonstrate that he or she (1) had a reasonable expectation of entering a valid business relationship; (2) defendant knew of that expectation; (3) defendant purposefully interfered to prevent plaintiffs' legitimate expectation from becoming a valid business relationship; and (4) damages resulted from defendant's interference. *Carcharadon,* 2022 WL 3908585 at *14. "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects." *Id.* (cleaned up).

Reddi's theory here is that Floral was aware of Reddi's contractual relationship and likely business expectancies with third party retailers and tried to interfere with these relationships and expectancies by sampling Reddi's products with retailers, disparaging Reddi, and its products, and deliberately reserving a booth next to Reddi at a trade show to poach potential customers. Memo. at 11–12. Floral takes issue with the sufficiency and admissibility of the evidence presented, addressing Reddi's submission of a text message as evidence. Resp. at 13–14.

"Given its temporary nature, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than

in a trial on the merits. Settled law holds that these relaxed evidentiary standards permit a district court to consider hearsay at the preliminary injunction stage." *Fed. Trade Comm'n v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 761–62 (N.D. Ill. 2016). Therefore, "affidavits and other hearsay materials are often received in preliminary injunction proceedings." *Id.* at 762. So, "the dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding." *Id.* (cleaned up). With that, the Court addresses the argument and evidence provided for the remaining claims.

Reddi does not identify a contract or provide evidence supporting its argument that "it is highly likely that the Defendant was well aware of Plaintiff's present contractual relations with third party retailers. . . ." Memo. at 11. In the same vein, Reddi fails to identify a reasonable business expectancy that existed between Reddi and a third party retailer or evidence that Floral was aware of a said business expectancy. Since Reddi has not shown that such relationships exist, the first element required for each claim is not satisfied. On that basis, Reddi has failed to demonstrate a likelihood of success on the merits for either tortious interference with contract and/or business expectancy.

In sum, Reddi has not met its burden of a likelihood of success on the merits for common law trademark infringement (Count I), deceptive trade practices (Count II), ICFA (Count III), or tortious interference with contract and/or business expectancy (Count IV). Because Reddi must satisfy all of the elements for the

issuance of a preliminary injunction and has failed to establish a likelihood of success on the merits for each claim, the Court need not address the elements of adequacy of the remedy at law, or irreparable harm, or balancing of the harms.

## Conclusion

For the foregoing reasons, the Court denies Plaintiff's Motion for Preliminary Injunction [8] without prejudice. Further, Plaintiff's Motion for Leave to Submit Additional Evidence of Confusion in Support of Plaintiff's Motion for Preliminary Injunction [20] is denied as moot.

Dated: December 21, 2023

United States District Judge
Franklin U. Valderrama